

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00395-CV

———————————————

IN RE KEVIN ABERCROMBIE; CHRISTIE ABERCROMBIE; 280 SPORTS, LLC; AND ABERCROMBIE HOLDINGS, LLC, Relators

---

Original Proceeding
352nd District Court of Tarrant County, Texas
Trial Court No. 352-331310-22

---

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Relators Kevin Abercrombie; Christie Abercrombie; 280 Sports, LLC; and Abercrombie Holdings, LLC filed a petition for writ of mandamus seeking relief from an order denying their motion to withdraw deemed admissions. Real Party in Interest David Abercrombie filed a response, and the parties filed additional letter briefs. Because we hold that the trial court abused its discretion by denying Relators' request to withdraw those admissions that were merits-preclusive, we conditionally grant the writ of mandamus in part.

## I. Background

This mandamus action arises from an intra-family lawsuit. Real Party in Interest David Abercrombie sued Relators Kevin and Christie Abercrombie (along with 280 Sports, LLC and Abercrombie Holdings, LLC), claiming that Kevin[1] had defaulted on some $2,550,000 worth of loans that had been made by David to Kevin. Kevin disputed that these payments were loans. Specifically, in his initial answers, Kevin "den[ied] that conditions precedent ha[d] occurred or [had] been performed as alleged." In Kevin's initial disclosures, he asserted "that no loans are owed or due at this time." In his answers to David's interrogatories that characterized these payments as loans, Kevin repeatedly denied that they were loans.

---

[1]We will refer to Relators collectively as "Kevin" and Real Party in Interest as "David."

David then propounded to Kevin requests for admissions, many of which asked Kevin to admit that David had loaned him money. Other requests for admission were predicated on the factual assumption that payments made to Kevin were indeed loans.

David served his requests for admissions on Kevin on July 20, 2022. Kevin's responses were due thirty days later. *See* Tex. R. Civ. P. 198.2(a). Kevin failed to answer the requests for admissions by that date. Thus, the requests were automatically deemed admitted. Tex. R. Civ. P. 198.2(c). In December 2022, David's attorney contacted Kevin's attorney and informed him that there had been no response to the admission requests. He suggested that Kevin file a motion to withdraw the deemed admissions, though he would not consent to such a motion. Kevin did not respond, so David filed a motion for summary judgment on March 28, 2023. A month after that, Kevin filed responses to the original requests for admissions. Although trial was scheduled for the week of August 21, the parties agreed to continue the trial until October 23, 2023.

In August, Kevin filed a motion to withdraw the deemed admissions. The trial court held a hearing on Kevin's motion on September 8, 2023. During the hearing, Kevin's attorney explained that his paralegal had suddenly left his office and that he had to scramble for a replacement. The new paralegal had failed to calendar the original request for admissions, and because of a security-related technical issue, the office had never received any emails concerning the case. Kevin's attorney admitted having a conversation with David's attorney around Christmas of 2022, but he received the impression that the parties would thereafter "focus" on mediation—not the admissions.

3

The trial court denied Kevin's motion to withdraw the deemed admissions on September 8, 2023.

## II. Mandamus Standard

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). "Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). "The relator must establish that the trial court could reasonably have reached only one decision." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Generally, a trial court's orders relating to discovery can be corrected on appeal, and consequently, mandamus is not typically available with respect to discovery issues. *In re Rozelle*, 229 S.W.3d 757, 761 (Tex. App.—San Antonio 2007, orig. proceeding). For this reason, a party seeking mandamus review of a trial court's discovery order must also show that an ordinary appeal is an inadequate remedy. *Walker*, 827 S.W.2d at 841–42. If, however, the trial court imposes discovery sanctions that effectively preclude a

4

party from presenting his claims or defenses, such as striking pleadings, dismissing the action, or entering a default judgment, then an ordinary appeal is an inadequate remedy unless a final, appealable judgment is entered simultaneously. *Id.* at 843; *see also In re Kellogg-Brown & Root, Inc.*, 45 S.W.3d 772, 777 (Tex. App.—Tyler 2001, orig. proceeding) (concluding the trial court's denial of a motion to withdraw deemed admissions left relator without an adequate remedy on appeal).

### III. Withdrawal of Deemed Admissions

Kevin claims that the trial court abused its discretion in denying him permission to withdraw deemed admissions. If a party fails to timely respond to a request for admissions, the request is automatically deemed to be admitted. Tex. R. Civ. P. 198.2(c). However, a trial court may permit a party to withdraw deemed admissions if:

(a) the party shows good cause for the withdrawal or amendment; and

(b) the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved by permitting the party to amend or withdraw the admission.

Tex. R. Civ. P. 198.3.

### A. Good Cause for Withdrawal

"Good cause," for the purpose of withdrawing deemed admissions, is established when a party's failure to respond to requests for admissions is "accidental or the result of a mistake, rather than intentional or the result of conscious indifference." *Wal-Mart Stores, Inc. v. Deggs*, 968 S.W.2d 354, 356 (Tex. 1998). A clerical error is "sufficient to

5

establish good cause for a failure to timely respond to a request for admission, even if a party is negligent, so long as the party's negligence does not rise to the level of conscious indifference." *Boulet v. State*, 189 S.W.3d 833, 837 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

However, a different standard applies when deemed admissions preclude a presentation of the merits—merits-preclusive admissions that "implicate the same due process concerns as other case-ending discovery sanctions." *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011). In that case, the party opposing withdrawal of the merits-preclusive admissions must demonstrate that there was "flagrant bad faith or callous disregard for the rules." *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005); *see also TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding) ("Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.").

Accordingly, our analysis must turn on whether the deemed admissions are merits-preclusive and—if they are—whether Kevin acted in bad faith by failing to timely answer the requests.

## B. Merits-Preclusive Admissions

The primary function of requests for admissions is to simplify trials by eliminating matters about which there is no real controversy but that may be difficult or expensive to prove. *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996). Requests for

admissions are improper when used to establish controverted issues that make up the fundamental legal issues of a case. *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 668 (Tex. App.—San Antonio 2014, pet. denied). Asking a party to admit that its claims are invalid or that it has no defense is an improper use of a request for admissions. *Medina v. Zuniga*, 593 S.W.3d 238, 244 (Tex. 2019); *see Sanders v. Harder*, 227 S.W.2d 206, 208 (Tex. 1950) (stating that admissions were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense"). Requests for admissions are intended to simplify trials and "should be used as 'a tool, not a trapdoor.'" *Marino*, 355 S.W.3d at 632 (quoting *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008)).

First, the initial discovery in this case has already established that Kevin denied receiving loans from David. Despite this, most of the requests for admissions ask for Kevin to admit or deny that he received loans from David, that Kevin told David that no further payments on the "loans" would be forthcoming, and what the terms of the "loan" were. Second, the deemed admissions were a basis for David's subsequent summary-judgment motion. Indeed, the motion states that "all the facts necessary to determine this Motion for Summary Judgment have already been deemed admitted by [Kevin's] failure in this regard." *See In re Am. Gunite Mgmt. Co.*, No. 02-11-00349-CV, 2011 WL 4550159, at *1 (Tex. App.—Fort Worth Oct. 3, 2011, orig. proceeding) (mem. op.) (noting coincidence between issue of whether admissions were merits-preclusive

7

and the fact that plaintiff had filed a motion for summary judgment based on the deemed admissions).

David insists that his questions were not merits-preclusive, arguing that his requests were "fact specific" and were not demands for Kevin to admit that he had no "grounds of defense." But David's questions go to the heart of the issues in this case. Despite knowing that Kevin had disputed that the money was "loaned" by David, David asked for Kevin to admit to the very opposite of that proposition, that is, to admit "to the validity of [David's] claims and concede [his own] defenses." *See Marino*, 355 S.W.3d at 632.

David also gives obvious examples of what requests might be merits-preclusive—asking a plaintiff to admit that he was negligent in causing a motor vehicle accident, for instance—and argues that his requests were not nearly so specific. But—even taking into account admissions requests that were conditioned on the fact of the loan—the fact that David's requests were not as obvious as his examples is hardly determinative. After all, the money's status as a loan is one of the main issues in the case, and asking Kevin to admit to a fact situation that *assumes the existence* of the loan is indistinguishable from asking Kevin to admit that he received a loan from David.

Because many of the requests for admissions were merits-preclusive, we must consider whether Kevin's attorney's conduct in failing to timely respond to the requests rose to a level of flagrant bad faith and callous disregard for the rules.

8

## C. Flagrant Bad Faith and Callous Disregard

When a party moves to withdraw deemed merits-preclusive admissions, due process requires that the party opposing the withdrawal bear the burden to show that the moving party's failure to answer the requests resulted from flagrant bad faith or callous disregard of the rules. *Id.* at 633–34. "Bad faith is not simply bad judgment or negligence[] but the conscious doing of a wrong for dishonest, discriminatory[,] or malicious purpose." *Armstrong v. Collin Cnty. Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.—Dallas 2007, no pet.).

Although Kevin's attorney was obviously negligent, and the time periods involved are disturbing, we do not believe that David discharged his burden to show that—with regard to the merits-preclusive admissions—Kevin's attorney's actions evinced flagrant bad faith or callous disregard for the rules.

Kevin's attorney explained to the trial court that he had suddenly lost his long-time paralegal and was forced to hire a new one during the period in which the requests for admissions had apparently been served on him. This resulted in a failure to schedule a timely response to the requests.[2] In addition, a technical issue with internet security had prevented the law office from receiving normal e-mails. Against this backdrop, Kevin's attorney learned from David's attorney in December 2022 that requests for

---

[2]David makes much of the fact that e-filing shows that one of Kevin's attorneys opened the requests for admissions on July 20, 2022—the date they were initially sent. Whether they were opened does not contradict Kevin's attorney's explanation for the failure to respond—the response deadline was not calendared by the new paralegal.

admissions had been sent but that no responses had been received. Kevin's attorney also believed that the parties would focus on mediation and did not think that David would contest a motion to withdraw the deemed admissions. After David filed a motion for summary judgment (based in part on the deemed admissions), Kevin's attorney started working on a motion to withdraw the deemed admissions. This motion was not filed until August 2023.

Kevin's attorney's conduct after the requests were deemed admitted is hardly a "model of diligence," *S. Tex. Innovations, LLC v. Rise Residential Constr., LP*, No. 02-18-00021-CV, 2018 WL 6844135, at *6 (Tex. App.—Fort Worth Dec. 31, 2018, pet. denied) (mem. op.), but neither is it an example of flagrant bad faith. "The focus of the good[-]cause requirement contained in Rule 198.3 is on why the party did not timely respond to the request[s] for admissions." *Saum v. Am. Express Nat'l Bank*, No. 02-19-00415-CV, 2021 WL 1034146, at *8 (Tex. App.—Fort Worth Mar. 18, 2021, pet. denied) (mem. op.). In other words, good cause for withdrawal is measured by the party's behavior *before* the issues are deemed admitted, not after. Indeed, our conclusion in *Saum* was informed by the Texas Supreme Court's decision in *Wheeler* holding that the trial court erred by refusing to permit the withdrawal of deemed admissions when the withdrawal was requested for the first time in a motion for new trial. *Id.* (relying on *Wheeler*, 157 S.W.3d at 442, 444); *see also S. Tex. Innovations*, 2018 WL 6844135, at *5 (holding that requesting party "bore the burden of demonstrating that *by not timely responding to the admission requests*, [the party seeking withdrawal] acted with flagrant bad

10

faith or with callous disregard" (emphasis added)).[3] Here, Kevin's attorney failed to answer the requests for admissions in a timely manner, but his explanations demonstrate that this failure was the result of a clerical mistake rather than a conscious attempt to derail the discovery process. *See Boulet*, 189 S.W.3d at 837 (holding that "calendaring error," even if negligent, suffices to establish good cause for failure to timely respond to admission requests). We therefore hold that David is unable to show that Kevin acted in flagrant bad faith and with callous disregard for the rules when he failed to timely answer David's merits-preclusive requests for admissions.

---

[3]In *Behzad-Noori v. Gilliam*, we found fault with an attorney who waited several months to seek to withdraw admissions and held that "significant delays in answering those requests and moving to set aside those deemed admissions weighs against a good cause finding." No. 02-02-00265-CV, 2003 WL 851566, at *2 (Tex. App.—Fort Worth Mar. 6, 2003, pet. denied) (mem. op.). That opinion predated the Supreme Court's decision in *Wheeler*, however. *Wheeler* made clear that even a complete failure to seek to withdraw deemed merits-preclusive admissions did not lead to a conclusion that there was flagrant bad faith. 157 S.W.3d at 444. Accordingly, with *Wheeler* in mind, we do not believe that tardiness in moving to withdraw deemed admissions weighs against a finding that good cause existed to withdraw the deemed admissions in the first place.

For this reason, we are not persuaded by the analysis in *Estate of Campos*, No. 04-19-00350-CV, 2020 WL 1866460, at *5 (Tex. App.—San Antonio Apr. 15, 2020, no pet.) (mem. op.) (holding that trial court could have regarded three-month delay in asking to withdraw deemed admissions as intentional or the result of conscious indifference). And our opinion in *Carter v. Perry*, No. 02-14-00185-CV, 2015 WL 4297586, at *3 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op.), is distinguishable on its facts. *See id.* (holding that trial court was entitled to find bad faith where party's excuse for failing to answer requests for admissions lacked credibility).

11

**D. Undue Prejudice**

To permit withdrawal, the record must also show that withdrawing the admissions will not unduly prejudice the opposing party and that withdrawal will further the presentation of the case's merits. *See* Tex. R. Civ. P. 198.3(b); *Marino*, 355 S.W.3d at 634. Undue prejudice occurs if "withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler*, 157 S.W.3d at 443.

Consideration of undue prejudice turns on the merits-preclusive nature of the requests for admissions. David argues that withdrawal of the deemed admissions "would significantly hamper [his] ability to prepare for trial and at the very least delay trial because of his justifiable reliance on the admissions." But "justifiable reliance" on deemed admissions that determine the outcome of a controversy is difficult to show: "When the party requesting admissions knew or should have known that the admissions were improper in this regard [that is, merits-preclusive], that party cannot be said to have relied on the admissions in deciding not to otherwise develop evidence." *Time Warner*, 441 S.W.3d at 668–69.

Here, David sought from Kevin admissions that he received loans from David. The issue of the loans' existence was controverted by Kevin. These requests for admissions, which involved controverted legal issues, were improper and outside the scope of normal requests for admissions. *See In re A.A.*, No. 01-13-00542-CV, 2013 WL 6569922, at *15 (Tex. App.—Houston [1st Dist.] Dec. 12, 2013, pet. denied) (mem.

12

op.) (noting that admissions improperly "embrace[d] controverted issues that go to the heart of this case"). Therefore, even if David had been prejudiced by the withdrawal of the admissions shortly before trial, "that prejudice is not 'undue.'" *See Time Warner*, 441 S.W.3d at 669. Because David's requests for admissions were improper, he was not justified in relying on them in preparing for trial. *See id.*; *see also In re TT-Fountains of Tomball, Ltd.*, No. 01-15-00817-CV, 2016 WL 3965117, at *13 (Tex. App.—Houston [1st Dist.] July 21, 2016, orig. proceeding) (mem. op.) ("Because her merit[s]-preclusive requests for admission[s] were improper, [Real Party in Interest] was not justified in relying on them in deciding to forego developing evidence to support her claims against Relators.").

There is a different result for the non-merits-preclusive admissions, however. David was entitled to rely on these in preparing for trial, and as the trial was scheduled for soon after the trial court made its decision to bar the withdrawal of the admissions,[4] we hold that David would be unduly prejudiced by the withdrawal of these deemed admissions.[5]

---

[4]The trial court again postponed the trial following its decision to deny Kevin's motion to withdraw the deemed admissions.

[5]The non-merits-preclusive deemed admissions include 1–4, 15–16, and 22 in the requests propounded to 280 Sports, LLC; and 1, 10–11, and 14 of the requests made to Abercrombie Holdings, LLC.

## IV. Sanctions

Although we do not conclude Kevin's attorney's conduct to be worthy of a "death penalty" sanction (that is, deeming admissions that completely concede his case), we are mindful that the attorney's extreme delay in filing both responses to the requests for admissions and filing a motion to withdraw the deemed admissions may still call for appropriate sanctions. Therefore, we remand to the trial court to consider whether Kevin's attorney's actions constitute abuse of the discovery process and, if so, whether the imposition of "just" sanctions is appropriate. *See* Tex. R. Civ. P. 215.2(b).

## V. Conclusion

We hold that the trial court abused its discretion by denying Kevin's motion to withdraw the merits-preclusive deemed admissions.[6] Therefore, we conditionally grant the writ of mandamus in part. The writ will only issue if the trial court fails to vacate its order denying withdrawal of Kevin's merits-preclusive deemed admissions only. We further remand this cause to the trial court to consider what sanctions, if any, should be imposed against Kevin or his attorney for any abuse of the discovery process that took place after he failed to timely respond to the requests for admissions.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: February 29, 2024

---

[6]We emphasize that the trial court did not abuse its discretion by refusing to allow withdrawal of the deemed admissions that were not merits-preclusive.

14